RECEIVED
APR 1 2 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| RONNIE NICHOLSON, ET AL | * | NO. 10-CV-01012 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| JOHN BALANCE, SHERIFF, BIENVILLE PARISH, ET AL | * | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed on behalf of Defendants, John Ballance, Sheriff of Bienville Parish, ("Ballance") and Sgt. John M. Crawford, Bienville Parish Sheriff's Office Narcotics Division ("Crawford"). [Doc. # 14]. Pro se Plaintiffs, Ronnie Nicholson, Cherry Miles, Travishia Miles, Keimizah Nicholson, and Ranaiya Nicholson, oppose the defendants' motion. For the reasons assigned herein, the Motion for Summary Judgment is **GRANTED**. Plaintiffs' claims are dismissed.

## BACKGROUND

On July 2, 2009, Defendant Crawford subscribed and swore to an affidavit for a search warrant on a mobile home located at the corner of Bienville Road and Military Road in Ringgold, Louisiana, which was allegedly owned by Plaintiff Ronnie Nicholson ("Nicholson"). [Doc. # 14-3 at 5]. The purpose of the warrant was to search for evidence relating to the sale and/or possession of cocaine and crack cocaine. [Id.]. Crawford described his basis for believing there was probable cause to search the house for evidence of drug-related crimes as follows:

> On 9/23/2007, your affiant met with a cooperating individual about narcotics trafficking in Bienville Parish. He/she told me that Ronnie

1

> Nicholson was selling a lot of Crack-Cocaine in Ringold, LA out of his mobile home located on US 371. CI told me that Nicholson was handling kilograms of Cocaine out of this residence and had [redacted] selling Cocaine for him. Nicholson, according to CI, is aligned with [redacted]. CI told me that [redacted], however, buys and sells [redacted] own Cocaine separate from Nicholson.
>
> On 10/03/2007, your affiant met with the cooperating individual again in reference to narcotics traveling by Ronnie Nicholson in Ringgold, LA. CI told me that Ronnie was keeping his Cocaine in [redacted] house while he was not in town and bringing it back to his residence when he was home.
>
> Your affiant has received, over the past 21 months, information from numerous citizens saying that Ronnie Nicholson was handling more drugs than anyone in Bienville Parish. While information was plentiful, your affiant was unable, during that time, to corroborate any of the information given him.
>
> Within the last 24 hours, your affiant received information from a reliable cooperating individual in reference to Ronnie Nicholson's residence. This RCI has given information on multiple occasions that has led to the seizure of quantities of Cocaine, Marijuana, and Methamphetamine. These seizures have resulted in arrests of multiple individuals as well as the indictments of individuals for federal narcotics violations. In addition to giving information, the RCI has made numerous controlled purchases of narcotics for your affiant and has proven to be knowledgeable in the field of narcotics trafficking. RCI reported that on that day, he/she had been inside the residence of Ronnie Nicholson on U.S. 371 in Ringgold, LA. While inside that residence, RCI reported that he/she saw multiple Crown Royal style bags of Cocaine there as well as firearms.

[Id. at 5-6]. Based on Crawford's affidavit, Judge Glenn Fallin of the Second Judicial District of Louisiana signed a search warrant for Nicholson's residence. [Id. at 7].

At around 5:00 p.m. on July 2, 2009, Crawford and officers of the Bienville Parish Sheriff's Office, Bossier Parish Sheriff's Office, Louisiana State Police, and Ringgold Police Department executed the search warrant at Nicholson's residence. [Id. at 2]. When no one answered the door the

officers forced entry and began searching the residence. [Id.]. Nicholson arrived at the residence while the officer's were conducting the search. [Doc. # 1, ¶ 5; Doc. # 14-3 at 2]. No drugs or evidence of drugs was found as a result of the search of Nicholson's residence. [Doc. # 14-3 at 2]. Plaintiffs state that the residence was completely overturned, rummaged through, and destroyed by the search and that a car outside the home suffered damage. [Doc. # 1, ¶¶ 7 - 12]. Defendants admit only that the door to Nicholson's residence was damaged as a result of the search. [Doc. # 14-3 at 2].[1] On June 14, 2010, Plaintiffs filed the immediate lawsuit seeking damages under 42 U.S.C. § 1983. [Doc. # 1].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

---

[1] While Plaintiffs' petition makes repeated reference to the damage the residence sustained because of the search, they have not attempted to make a claim for use of excessive force in executing the search warrant. The plaintiffs' response to the motion for summary judgment only focuses on Defendants' actions in obtaining a purportedly unconstitutional search warrant. Accordingly, no claim for use of excessive force in executing the search warrant is before the Court.

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

## **DISCUSSION**

### **A. Claims by Cherry Miles, Travishia Miles, Keimizah Nicholson, and Ranaiya Nicholson**

Plaintiffs' petition names as petitioners Ronnie Nicholson, Cherry Miles, Travishia Miles (16), Keimizah Nicholson (5), and Ranaiya Nicholson (4). Local Rule 11.1 requires that: "[d]ocuments filed by a party not represented by counsel shall be signed by the party and shall include name, address and telephone number." Plaintiffs have no named counsel, are admittedly pro se, and only Ronnie Nicholson signed the petition. [Doc. # 1]. Since Ronnie Nicholson is not an

attorney, he can only represent himself in filing the petition. Because Cherry Miles, Travishia Miles, Keimizah Nicholson, and Ranaiya Nicholson did not sign the petition, their claims of are not properly before the Court.[3] Accordingly, their claims are dismissed without prejudice.

## B. Ronnie Nicholson's § 1983 Claims

### Claims against John M. Crawford

Nicholson provides two bases for his claim against Crawford. First, he contends that "Sergeant Crawford's affidavit was not based on probable cause and was insufficient to justify the issuance of a warrant and the execution of the search." [Doc. # 21 at 2]. Second, he avers that "Crawford knowingly used uncorroborated information to obtain a search warrant." [Id.]. Crawford argues that the search warrant was proper and that he is entitled to qualified immunity.

"The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of the then clearly established law." *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). There are two elements to an inquiry of whether an officer is entitled to the protections of qualified immunity: 1) whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and 2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first inquiry for this Court is whether Crawford's actions as alleged by Nicholson violated a constitutional right. Nicholson's complaint centers on whether there was probable cause to issue the search warrant. Accordingly, the Court first examines the sufficiency of Crawford's

---

[3] That Nicholson would be bringing the claim on behalf of his children does not change the opinion of this Court. *See A.A. v. Houston Independent School District*, 2011 WL 181356 (S.D.Tex. Jan. 19, 2011).

affidavit and whether it justified the issuance of the search warrant.

"A police officer seeking the issuance of a search warrant must present an affidavit containing facts sufficient to 'provide the magistrate with a substantial basis for determining the existence of probable cause." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 537 (1983)). Probable cause is evaluated under a totality-of-the-circumstances test. *Gates*, 462 U.S. at 238. It exists "when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109. An affidavit supporting a search warrant is presumed valid. *Mason v. Lowndes County Sheriff's Department*, 106 Fed.Appx. 203, 206 (5th Cir. 2004); *Arceneaux v. Louisiana Department of Public Safety*, 2008 WL 2369188 at *4 (W.D.La. June 10, 2008). And while courts "accord great deference to a magistrate's determinations of probable cause," they should not "defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *Kohler*, 470 F.3d at 1109 (internal citations omitted). "An affidavit may rely on hearsay–information not within the personal knowledge of the affiant, such as an informant's statement–as long as the affidavit presents a substantial basis for crediting the hearsay." *United States. v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993) (internal quotations and citations omitted). "An informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report." *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006). "The veracity of an informant is often assessed from the accuracy of previous tips." *Laury*, 985 F.2d at 1312. "An informant's basis of knowledge can ... be established by a particularly detailed tip." *United States v. Jackson*, 818 F.2d 345, 349 (5th Cir. 1987).

Sergeant Crawford's affidavit offered three sources of information in support of the search warrant. First, Crawford pointed to information provided by a cooperating individual in late September and early October of 2007. The affidavit was dated July 2, 2009. Although Nicholson does not raise this point, that information was stale. "[T]he amount of delay which will make information stale depends upon the particular facts of each case, including the nature of the criminal activity and the type of evidence sought." *United States v. Freeman*, 685 F.2d 942, 951 (5th Cir. 1982). A tip that Nicholson may have been trafficking cocaine in Fall 2007 is insufficient to show probable cause that cocaine was present in his home in July 2009.

Likewise, the statement in Crawford's affidavit that "over the past 21 months, [he had received] information from numerous anonymous citizens saying that Ronnie Nicholson was handling more drugs than anyone in Bienville Parish," is not enough to justify probable cause. Nothing in the affidavit shows the veracity or reliability of the anonymous individuals or how they knew Nicholson was handling more drugs than anyone in Bienville Parish. *See Kohler*, 470 F.3d at 1110. Since Crawford specifically stated that he had not done any investigation that would corroborate the tips and supply probable cause, the anonymous citizens' statements are also not enough to support a finding of probable cause to issue the search warrant. *Id.* at 1111.

Crawford's affidavit, however, includes a third tip regarding drug activity by Nicholson. The information provided by the reliable cooperating individual (RCI) within twenty-four hours prior to Crawford's affidavit was sufficient to give Judge Fallin a substantial basis for determining probable cause existed. First, Crawford's affidavit states that the RCI had been used for controlled purchases and was familiar with narcotics trafficking. Additionally, the RCI had been in Nicholson's residence within the past twenty-four hours and while there saw bags of cocaine as well as firearms. Therefore,

Crawford's affidavit established the RCI's basis of knowledge. *See Mack*, 461 F.3d at 551. Second, Crawford's affidavit demonstrated the veracity and reliability of the RCI by noting that information previously given by the RCI had led to the seizure of cocaine, marijuana, and methamphetamine and the arrest and indictment of several individuals. *See Id.* Accordingly, based on Crawford's affidavit, Judge Fallin had a substantial basis for believing probable cause existed.

Nicholson also contends that Crawford knowingly used uncorroborated information to obtain the search warrant. However, "[t]here is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible. Whether subsequent corroboration is necessary must be determined in light of the totality of the circumstances presented by the particular set of facts." *U.S. v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997). Crawford's affidavit sufficiently established the RCI's veracity, reliability, and basis of information so that, based on the totality of the circumstances, separate corroboration of that information was not necessary. Because there was a substantial showing of probable cause, the warrant was not facially invalid.[4]

Nicholson's second contention concerning the knowing use of uncorroborated information could also be construed as a *Franks* claim. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Under *Franks*, "a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application." *Kohler*, 470 F.3d at 1113. "Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Id.* "To prevail on a federal claim of unlawful search and seizure, a plaintiff must demonstrate a genuine

---

[4] Because this Court finds there was a substantial basis for the magistrate to issue the search warrant, a claim under *Malley v. Briggs*, 475 U.S. 335 (1986), is inapplicable.

issue of fact exists as to whether a defendant knowingly provided false information to secure the search warrant or gave false information in reckless disregard for the truth." *Arceneaux*, 2008 WL 2369188 at *4. "To meet this burden the plaintiffs must make a strong preliminary showing that the affiant made the misstatement or omission with the intent to mislead the magistrate." *Mason*, 106 Fed.Appx. at 206 (internal quotations and citations omitted).

Nicholson has not submitted evidence that shows Crawford misled Judge Fallin. The only proof Nicholson offers with his response to the motion for summary judgment are sixteen "statements from community re: Ronnie Nicholson" and a statement by a Ms. Evelyn Reed. [Doc. # 21-1]. None of these documents suggests Crawford intentionally or with reckless disregard for the truth included false information or omitted material facts from his affidavit for the warrant application. The statements by the community, which are really just responses to a survey Nicholson conducted, only state that the persons named had not witnessed excessive traffic around Nicholson's home. The statement by Ms. Reed contends that Crawford asked her to get drugs from Nicholson by any means necessary. But these statements do not satisfy Nicholson's burden of proof. As the Fifth Circuit stated in *Mason* at 207, "*Franks* clearly puts the burden on the challenger to make a substantial showing of deliberate falsity or reckless disregard for the truth." While the community statements show that some people may not have noticed anything unusual about Nicholson's residence, it does not constitute a substantial showing that Crawford's affidavit was deliberately false in recounting the RCI's tip that he had seen drugs and firearms in Nicholson's residence within the past twenty-four hours. The same is true of the statement by Ms. Reed. Nicholson has not provided adequate proof to establish a *Franks* violation by Crawford.

Because the warrant affidavit was facially valid and because Nicholson has not presented

9

enough evidence to make a *Franks* claim, there has been no constitutional violation by the Crawford. Accordingly, the second prong of the *Saucier* test is unnecessary. Nicholson has failed to show that Crawford violated his constitutional rights. Nicholson's § 1983 claims against Crawford are thereby dismissed with prejudice.

Claims against John Ballance

Nicholson's petition makes two allegations against Ballance, both in his official capacity as Sheriff of Bienville Parish.[5] First, he asserts that Ballance and the Sheriff's office "was so grossly negligent in its training, supervision, and discipline of its officers that it was deliberately indifferent to and demonstrated reckless disregard toward the potential violation of Constitutional right [sic]." [Doc. # 1, ¶17]. Second, Nicholson makes a *respondeat superior* claim, arguing that Ballance "is vicariously liable for Sgt John Crawford action [sic]." [Doc. #1, ¶16].

A claim against a municipal official in his official capacity is treated the same as a claim against the municipality itself. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Municipalities, though, are not liable for constitutional torts under § 1983 based on a theory of *respondeat superior*. *McCall v. Peters*, 2003 WL 21488211 at *10 (N.D.Tex. May 12, 2003) ("[§ 1983] liability does not attach merely because a city employed a tortfeasor") (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). Instead, municipalities "can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Johnson v. Louisiana*, 2010 WL 996475 at *11

---

[5] To the extent Nicholson attempts to raise a claim against Ballance in his personal capacity, such a claim must be dismissed with prejudice. Nicholson has offered no argument, much less evidence, that Ballance was personally involved in the alleged deprivation of Nicholson's constitutional rights. Therefore, any personal capacity claim against Ballance must be dismissed.

(W.D.La. March 16, 2010) (quoting *Monell* at 694).

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. [citation omitted]. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrainted employees come into contact. [citation omitted]. Only then can such a short-coming be properly thought of as a city policy or custom that is actionable under § 1983. [citation omitted].

*Connick v. Thompson*, 563 U.S. ___ (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Board of Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 409 (1997)).

Federal jurisprudence makes clear that *respondeat superior* is not a viable theory of liability in § 1983 actions. *See McCall*. Consequently, Nicholson's second claim against Ballance for vicarious liability for Crawford's actions is untenable. Further, Nicholson has not presented evidence of similar constitutional violations to warrant liability under the stringent deliberate indifference standard. There is no proof that Ballance had "actual or constructive notice that a particular omission in [the] training program causes [officers] to violate citizens' constitutional rights. *Connick*, 563 U.S. at ___. And as noted above, there is no proof Crawford's actions rise to the level of a constitutional violation. Nicholson has not met his burden of showing a genuine dispute as to a material fact exists regarding his claims against Ballance. Summary judgment on those claims must be granted. Nicholson's claims against Ballance are dismissed with prejudice.

### C. Ronnie Nicholson's State Law Claims

In their memorandum in support of the motion for summary judgment, Defendants assert that

Nicholson's state law tort claims should also be dismissed because there is no genuine issue of material fact. [Doc. # 14-2 at 10]. Nicholson's response to the motion for summary judgment makes no mention of any state law claims, and a review of the petition does not indicate that a state tort claim has been made. However, this Court has dismissed all federal claims under § 1983. Pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to continue exercising supplemental jurisdiction over any state law tort claims Nicholson may have against the defendants. Accordingly, Nicholson's state law claims are dismissed without prejudice. If Nicholson wishes to continue a state law claim he should bring suit in the appropriate state court within the time frame provided in 28 U.S.C. § 1367(d).

## CONCLUSION

For the reasons assigned above, Defendants' motion for summary judgment is **GRANTED**. Claims by Cherry Miles, Travishia Miles, Keimizah Nicholson, and Ranaiya Nicholson as well as any state claim made by Ronnie Nicholson are **DISMISSED WITHOUT PREJUDICE**. Ronnie Nicholson's § 1983 claims against Defendants are **DISMISSED WITH PREJUDICE**.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE